UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| STEVEN PEARSON | : | |
| DEANNA L. PEARSON, | : | |
| | : | |
| Debtors | : | Case No. 08-30768 RFH |
| | : | |

BEFORE

ROBERT F. HERSHNER, JR.
UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

| | |
|---|---|
| For Debtors: | William Rhymer<br>P.O. Box 81028<br>Conyers, Georgia 30013 |
| The Chapter 13 Trustee: | Tony D. Coy<br>P.O. Box 954<br>Macon, Georgia 31202 |

## MEMORANDUM OPINION

_____Camille Hope, the Chapter 13 Trustee ("Trustee"), filed with the Court on September 8, 2008, an Objection To Confirmation. Trustee's objection came on for a hearing on September 17, 2008. The Court, having considered the objection, the record in Debtors's bankruptcy case,[1] and the arguments of counsel, now publishes this memorandum opinion.

Steven Pearson and Deanna L. Pearson, Debtors, filed with the Court on July 1, 2008, a petition under Chapter 13 of the Bankruptcy Code. In their bankruptcy schedules, Debtors list unsecured nonpriority claims that total $21,582. Debtors filed on July 16, 2008, a proposed Chapter 13 plan. Debtors propose to pay in full all unsecured claims through their Chapter 13 plan.[2] Debtors propose to pay in full the secured claims and priority claims[3] before any distributions[4] are made on the unsecured claims. Debtors propose to "accelerate"[5] the payments on their secured claims. Debtors propose to pay the secured claims about $100 more per month than the monthly payments required under the terms of their contractual obligations. The

---

[1] Counsel stipulated that the Court could consider the entire record in Debtors's bankruptcy case in deciding the issues presented.

[2] This is known as a 100% plan or a 100% case.

[3] Debtors do not list any unsecured priority claims in their bankruptcy schedules.

[4] Payments made by the Chapter 13 trustee on unsecured claims are called distributions.

[5] Accelerate means to pay more than the periodic payment required by the contractual obligation.

term of the proposed plan exceeds the maximum of 5 years[6] allowed by the Bankruptcy Code.[7] Debtors's proposed plan will be modified after the Court rules on the issues presented in Trustee's objection so as not to exceed the 5 year limit.

Debtors's residence is encumbered by a first mortgage in favor of Countrywide and by a second mortgage in favor of Citifinancial. Debtors propose, through their Chapter 13 plan, to cure the arrearage of $3,500 owed to Countrywide and the arrearage of $426 owed to Citfinancial. Debtors propose to make their regular monthly mortgage payments directly to Countrywide ($1,088) and to Citifinancial ($213).

Debtors have passed the "means test"[8] and could have filed a Chapter 7 case rather than this Chapter 13 case. If Debtors had filed a Chapter 7 case, no distributions would be made on unsecured claims.[9]

Trustee objects to confirmation of Debtors's proposed Chapter 13 plan. Trustee contends that, as a matter of law, a Chapter 13 plan is not proposed in good faith if the plan (1) proposes to delay distributions on unsecured claims in order to accelerate the payments on secured claims, or (2) proposes to pay in full the secured

---

[6] See Trustee's Report on the proposed plan.

[7] 11 U.S.C.A. § 1322(d) (West Supp. 2008).

[8] 11 U.S.C.A. § 707(b) (West Supp. 2008).

[9] This is known as a "no asset Chapter 7 case."

3

claims before any distributions are made on unsecured claims. Trustee questions whether Debtors's proposed plan satisfies the "disposable income test" because Debtors propose to pay more each month to secured claims than Debtors are contractually obligated to pay.

Trustee contends that the periodic payments on secured claims should be in the amounts called for in the contracts. Trustee contends that any remaining funds should be paid on the unsecured claims. Trustee's general practice is to make monthly payments simultaneously on secured claims and unsecured claims.

Debtors contend that their Chapter 13 plan is proposed in good faith because they could have filed a Chapter 7 case in which unsecured creditors would have received no distributions. Debtors assert that their proposed Chapter 13 plan provides that unsecured claims will be paid in full. Debtors assert that unsecured creditors are better off with the proposed plan than if Debtors had filed a Chapter 7 case. Debtors contend that they could have filed a Chapter 7 case and then "doubled up" on their monthly payments to secured creditors because they would no longer be obligated to the unsecured creditors.

Section 1325(a) of the Bankruptcy Code provides that the Court shall confirm a Chapter 13 plan if certain requirements are satisfied. Section 1325(a)(3) provides:

> **§ 1325.  Confirmation of plan**
> **(a)** Except as provided in subsection (b), the court shall confirm a plan if—

4

> . . .
>
> **(3)** the plan has been proposed in good faith and not by any means forbidden by law;

11 U.S.C.A. § 1325(a)(3) (West 2004).

In <u>Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens)</u>,[10] the Eleventh Circuit Court of Appeals stated that in determining whether a Chapter 13 plan is proposed in good faith, a bankruptcy court must consider the following non-exclusive factors:

> (1) the amount of the debtor's income from all sources;
> (2) the living expenses of the debtor and his dependents;
> (3) the amount of the attorney's fees;
> (4) the probable or expected duration of the debtor's Chapter 13 plan;
> (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
> (6) the debtor's degree of effort;
> (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
> (8) special circumstances such as inordinate medical expense;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
> (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
> (11) the burden which the plan's administration would place on the trustee.

---

[10] 702 F.2d 885 (11th Cir. 1983).

702 F.2d at 888-89.

The Eleventh Circuit also stated:

> The Eighth Circuit court amplified the tenth factor, stating that the bankruptcy court should consider the extent to which claims are modified and the extent of preferential treatment among classes of creditors. All but one of the circuits note that substantiality of the repayment to the unsecured creditors should be one of the factors considered.
>
> Like the court in *In re Estus,* we do wish to note that other factors or exceptional circumstances may support a finding of good faith, even though a debtor has proposed no or only a nominal repayment to unsecured creditors. . . .
>
> The Eighth Circuit court also added to the list consideration of the type of debt to be discharged and whether such debt would be nondischargeable under chapter 7. . . . This is yet another factor to which bankruptcy courts should be alert.
>
> Another factor noted by the Eight Circuit court is the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. . . . The factors we have explicitly mentioned are not intended to comprise an exhaustive list, but they should aid bankruptcy courts as they determine whether debtors have proposed chapter 13 plans in good faith.

702 F.2d at 889.

6

In <u>Shell Oil Co. v. Waldron (In re Waldron)</u>[11] the Eleventh Circuit stated:

> We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied.
>
> Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.
>
> The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

785 F.2d at 941.

"A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard." <u>Jim Walter Homes, Inc. v. Saylors (In re Saylors)</u>, 869 F.2d 1434, 1438 (11th. Cir. 1989).

---

[11] 785 F.2d 936 (11th Cir.), cert. dismissed 478 U.S. 1028, 106 S. Ct. 3343, 92 L.Ed. 2d 763 (1986).

"[T]he good faith requirement remains the fulcrum in assuring that a debtor receives a 'fresh start' but not a 'head start' under the Bankruptcy Code." In re Stewart, 109 B.R. 998, 1006 (D. Kan. 1990).

Good faith is determined by examining the totality of the circumstances. In re Sellers, 285 B.R. 769, 773 (Bankr. S.D. Ga. 2001).

The debtor has the ultimate burden of proving that the proposed Chapter 13 plan is confirmable. Allen v. Smith (In re Allen), Ch. 13, Case No. 98-41229 RFH (Bankr. M.D. Ga., May 18, 1999).

The good faith inquiry "requires the Court to consider the totality of the circumstances to determine whether a debtor has abused the provisions, purpose, or spirit of Chapter 13 in his plan proposal." In re York, 282 B.R. 519, 524 (Bankr. M.D. Ga. 2002) (Walker, J.).

The Court will now apply the Kitchens factors to Debtors's proposed Chapter 13 plan. On Schedules I and J of their bankruptcy petition, Debtors state that their combined average monthly income, after certain deductions, is $4,287 and list their expenses as $3,407. Trustee does not contend that Debtors's expenses are excessive. Debtors's net monthly income is $880. Debtors propose to pay all but $68 of their net monthly income into their Chapter 13 plan. The term of the proposed plan will be modified after the Court rules on the issues presented in this memorandum opinion. The amount of attorney's fees for Debtors's counsel will be determined at the final

8

hearing on confirmation.

Debtors's Statement of Financial Affairs shows that their incomes were stable in 2006, 2007 and 2008 (to date of filing). There is no evidence that Debtors's incomes are likely to change or that Debtors have any special circumstances such as inordinate medical expenses. Debtors have not filed any other bankruptcy case during the previous 8 years. There is no evidence that any of Debtors's obligations are non-dischargeable in bankruptcy, except possibly for a student loan of $10,531. Except for the student loan, each of Debtors's unsecured obligations is less than $1,500. Debtors have a seven-year old motorcycle, a six-year old truck, and a six-year old van. The truck and van are pledged as collateral for loans. Debtors have three minor children.

On Schedule A, Debtors list the value of their residence as $147,000. The mortgage obligations total $146,649 with monthly payments totaling $1,301. Trustee does not contend that Debtors's mortgage obligations are excessive. Trustee does not question the accuracy of Debtors's bankruptcy schedules. Trustee states that the administration of Debtors's proposed Chapter 13 plan would not be a burden.

Simply stated, there is nothing unusual or exceptional about Debtors's circumstances. Debtors propose to pay the secured claims in full before paying any distributions on unsecured claims. This procedure is permitted in some jurisdictions. See Keith M. Lundin, 3 Chapter 13 Bankruptcy, 3D Edition, § 204.2 Order of Payments to Creditors, p. 204-20 (2000 & Supp. 2004) ("In some jurisdictions, the

standing Chapter 13 trustee routinely pays . . . unsecured claims after all other claims (other than long-term debts) have been paid in full."); p. 204-21 ("In a few jurisdictions, courts require that unsecured claim holders receive some payments coincidental with commencement of payments to other claim holders.").

Trustee contends that Debtors's proposed Chapter 13 plan is unfair to unsecured creditors. Trustee urges the Court to rule "as a matter of law" that a Chapter 13 plan is not proposed in good faith if the plan proposes to accelerate the payments on secured claims or proposes to pay in full the secured claims before distributions are made on unsecured claims. In the Court's view, good faith is a finding of fact which must be determined on a case-by-case basis by examining the totality of the circumstances and applying the Kitchens factors.

In In re Crussen,[12] the Chapter 13 debtor proposed to accelerate the payment of the second mortgage on his residence. The debtor proposed to pay an extra $650 per month on the second mortgage and thereby pay in full the second mortgage in 36 months while paying a dividend of 44% on unsecured claims. The bankruptcy court stated in part:

> Based upon the facts of this case, the Court is of the opinion that Trustee's objections [to confirmation] are meritorious. There is no evidence before the Court that the prepayment of the second mortgage is reasonably necessary for the support of Debtor's family. Prepayment

---

[12] 264 B.R. 723 (Bankr. W.D. Okla. 2001).

10

> of the second mortgage will indeed operate to benefit the Debtor rather than the unsecured creditors. On these facts, it is unfair to separately classify the second mortgage to facilitate such prepayment, and there are no special circumstances warranting preferring Debtor over the unsecured creditors. Finally, Debtor is not sincerely making his best effort to pay his debts, but rather wants to benefit himself through the plan.

264 B.R. at 726.

In <u>In re Elrod</u>,[13] the Chapter 13 debtors proposed to pay $25 more per month than required by the second mortgage on their residence. The mortgage holder agreed to rewrite the loan and significantly lower the interest rate. The Chapter 13 trustee contended that the $25 per month should go to the unsecured creditors rather than being used to increase the debtors' equity in their mortgaged residence. Unsecured claims totaled about $30,000. The trustee's only evidence of bad faith was the slight reduction in the percentage paid on unsecured claims as a result of paying $25 more per month on the second mortgage. The bankruptcy court stated:

> The plan proposes payment of 25% on unsecured claims, which would be about $7,500. The trustee is complaining that the debtors should pay another 5%, specifically the $1,500 they propose to pay Citifinancial ($25 per month for 60 months). The percentage to be paid on unsecured claims is only one factor among many when the court must decide whether a plan was proposed in good faith. The

---

[13] 270 B.R. 258 (Bankr. E.D. Tenn. 2001).

11

> proposed payments to Citifinancial will cause a slight reduction in the percentage that the debtors might pay to unsecured creditors based on a 60 month plan. This slight reduction is not sufficient evidence by itself to show lack of good faith by the debtors.
>
> Furthermore, the evidence the court has taken from the schedules does not support the trustee's argument that the plan was not proposed in good faith. There is nothing in the schedules to support a finding of bad faith.
>
> Citifinancial's acceptance of the proposed plan amounts to a refinancing of the mortgage. It will benefit the debtors greatly by reducing the total amount they must pay to retire the mortgage. The trustee wants the debtors to give this up so that unsecured creditors will receive the additional sum of $25 per month. The proposed plan, far from being in bad faith, represents an unusually good financial rehabilitation of the debtors at very little cost to the unsecured creditors. The court will enter an order denying the trustee's objection and confirming the plan.

270 B.R. at 262-63.

In In re Liles,[14] the mortgage on the Chapter 13 debtors's mobile home required monthly payments of $408. The debtors proposed to pay $979 per month thereby satisfying the mortgage over the life of their Chapter 13 plan. The debtors argued that the accelerated payment was not an abuse of the spirit of the Bankruptcy Code because there were no allegations of malfeasance or hiding of assets. The bankruptcy court denied confirmation of the proposed Chapter 13 plan and stated:

---

[14] 292 B.R. 138 (Bankr. E.D. Tex. 2002).

12

> According to the Debtors' Schedules, introduced as Defendant's Exhibit "A", unsecured nonpriority debt was scheduled in the amount of $34,590.00 and unsecured priority debt was scheduled in the amount of $5,061.00. The Standing Chapter 13 Trustee agues that the Debtors' budget as reflected on Schedule J demonstrates $1,350.00 surplus monthly. Given said surplus (less the Trustee's fee), if the Debtors pay Greenpoint according to the terms of their contract over the life of the 36 month Plan, in excess of $30,500 in disposable income will be available to pay creditors other than Greenpoint Credit. There is a difference of approximately $17,000 less available to pay to the aforementioned creditors under the Debtors' proposed plan. Thus, the Debtors are not prepaying their account with Greenpoint, rather their unsecured creditors are funding the accelerated pay off of this asset for these debtors. This the Court will not condone.

292 B.R. at 140-41.

See also In re Pope, 215 B.R. 92 (Bankr. S.D. Ga. 1997) (Walker, J.) (plan that proposed to pay $842 per month on mobile home obligation when contract payment was $283 was not proposed in good faith); In re Walsh, 224 B.R. 231, 236 (Bankr. M.D. Ga. 1988) (Walker, J.) (debtor is not free to allocate net income to payment of any secured claim he chooses; debtor is limited to disbursements on secured claims which are reasonably necessary for maintenance and support of debtor and dependents).

Turning to the case at bar, Debtors propose to accelerate the payments on secured claims and to pay in full the secured claims before any distribution is paid on unsecured claims. This proposal benefits Debtors because secured creditors are

entitled to receive interest until their claims are paid in full.[15] Secured creditors are put in a better position than if Debtors had not filed for bankruptcy relief because their claims will be paid faster.

Debtors state that they want to pay secured claims as fast as possible "in case something tragic happens down the road." Trustee contends that Debtors's proposal is unfair because unsecured creditors will be denied the "use" of their distributions until after the secured claims are paid in full. Trustee contends that Debtors may decide to, or circumstances may force them to, convert their Chapter 13 case to a Chapter 7 case[16] after the secured claims are paid and before dividends are paid or completed on the unsecured claims.

Debtors assert that unsecured creditors are better off with the proposed plan than if Debtors had filed a Chapter 7 case. A Chapter 13 case offers certain benefits that are not available in a Chapter 7 case or outside of bankruptcy. Debtors, through their Chapter 13 plan, propose to deaccelerate the default on and cure the arrearage on the mortgages on their residence. Without the benefits of a Chapter 13 case, Debtors could lose their residence. In addition, Debtors's propose to "strip down"[17] a claim

---

[15] 11 U.S.C.A. § 1325(a)(5)(B) (ii) (West Supp. 2008).

[16] 11 U.S.C.A. § 1307(a) (West 2004) (debtor may convert a Chapter 13 case to a Chapter 7 case at any time; any waiver of this right is unenforceable).

[17] "Strip down" means that a claim will be bifurcated into its secured and unsecured components.

14

secured by their 2002 Chrysler van. This would not be possible outside of the Chapter 13 case.

Debtors seek the benefits and protections offered by a Chapter 13 case. Chapter 13 requires that the plan be proposed in good faith. As stated in <u>Kitchens</u>, the Court should consider the extent of preferential treatment among classes of creditors. Debtors are clearly preferring their secured creditors over their unsecured creditors. Debtors could decide to convert their Chapter 13 case to a Chapter 7 case after paying off their secured creditors but before completing their payments on unsecured claims, thereby leaving their unsecured creditors unpaid.

Debtors have shown no unusual or exceptional circumstances that warrant preferring the secured creditors over the unsecured creditors. There is no evidence that the accelerated payment of secured claims is reasonably necessary for the support of Debtors or their dependants. The accelerated payment benefits Debtors to the unfair detriment of their unsecured creditors. It gives Debtors a "head start" rather than a "fresh start." The Court is persuaded that Debtors are not sincerely making their best efforts to pay their debts and that the Chapter 13 plan is not proposed in good faith.

Trustee also questions whether Debtors's proposed Chapter 13 plan satisfies

15

the "disposable income test."[18]  The Court, having determined that Debtors's Chapter 13 plan is not proposed in good faith, need not consider whether the plan satisfies the disposable income test.

The Court is persuaded that it must sustain Trustee's Objection To Confirmation.

An order in accordance with this memorandum opinion will be entered this date.

DATED this 5th day of December 2008.

/s/ Robert F. Hershner, Jr.

_____
ROBERT F. HERSHNER, JR.
United States Bankruptcy Judge

---

[18] 11 U.S.C.A. § 1325(b)(1) (West 2004 & Supp. 2008) (if trustee or an allowed unsecured claim holder objects, plan must provide (1) for full payment of unsecured claims or (2) for payment of all disposable income into plan during applicable commitment period).